**Mary STEWART, et al., Plaintiffs,**

**v.**

**Leonard EVERETT, Defendant.**

**No. 89–161–Civ–Oc–HTS.**

United States District Court,
M.D. Florida,
Ocala Division.

Sept. 29, 1992.

Gregory S. Schell, Florida Rural Legal Services, Inc., Lake Worth, Fla., for plaintiffs.

Leonard Everett, pro se.

## OPINION AND ORDER

SNYDER, United States Magistrate Judge.

This cause is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. # 50), filed October 29, 1991 (hereinafter Motion). Defendant's Response to Plaintiffs' Motion for Summary Judgment (Doc. # 56) (hereinafter Response) and Memorandum of Law in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment (Doc. # 57) (hereinafter Opposition Memorandum) were filed November 7, 1991.

In their Motion, Plaintiffs seek judgment against Everett for violation of two provisions of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. § 1801 *et seq.* First, they allege he violated the requirement that farm labor contractors receive authorization from the Secretary of Labor to transport agricultural workers. *See* 29 U.S.C. § 1811(a). Second, they allege he violated the provision requiring farm labor contractors transporting agricultural workers to carry adequate insurance on their vehicles. *See* 29 U.S.C. § 1841(b)(1)(C); 29 C.F.R. § 500.121. Plaintiffs maintain these violations were intentional within the meaning of 29 U.S.C. § 1854(c)(1), and thus entitle them to statutory damages in the amount of $500 per violation. Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (Doc. # 51) (hereinafter Memorandum in Support), filed October 29, 1991, at 6. Everett concedes he violated the statutory provisions in question, but insists "there is a genuine issue of fact as to whether this Defendant's actions were intentional." Opposition Memorandum at 3.

## STANDARD OF REVIEW

■ Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the party seeking summary judgment bears the burden of showing the court, by reference to supporting materials in the file, that there are no genuine issues of material fact more appropriately decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). A moving party discharges this burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554. When a moving party meets its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. There is a genuine issue for trial if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must deny a motion for summary judgment if there exists a genuine issue of material fact for trial. Fed.R.Civ.P. 56(c).

## ANALYSIS

### A. Stipulated Facts

The parties have stipulated to the following set of facts. *See* Joint Pre–Trial Stipulation (hereinafter Joint Stipulation), filed May 6, 1991, at 5. Defendant Leonard Everett, a resident of Sumter County, Florida, was at all times relevant to this action registered and acted as a farm labor contractor within the meaning of the AWPA. On or about April 9, 1989, Everett recruited and hired the Plaintiffs to hoe watermelons at a job site near Archer, Florida. The following day, April 10, 1992, Plaintiffs were being transported to the jobsite in a van owned by Everett when the van was involved in an accident near Archer, Florida. On the day the accident occurred, Everett was not authorized to transport agricultural workers by the Secretary of Labor, and did not have the amount of liability insurance on his van prescribed by the Secretary of Labor.

### B. AWPA Violations

The AWPA mandates "[n]o person shall engage in any farm labor contracting activity, unless such person has a certificate of registration from the Secretary [of Labor] specifying which farm labor contracting activities such person is authorized to perform." 29 U.S.C. § 1811(a). Transporting migrant or seasonal agricultural workers is a covered "farm labor contracting activity." *Id.* § 1802(6). The AWPA further prescribes:

> When using, or causing to be used, any vehicle for providing transportation [of any migrant or seasonal agricultural worker], each ... farm labor contractor shall—
> ....
> (C) have an insurance policy or a liability bond that is in effect which insures the ... farm labor contractor against liability for damage to persons or property arising from the ownership, operation, or the causing to be operated, of any

vehicle used to transport any migrant or seasonal agricultural worker.

29 U.S.C. § 1841(b)(1)(C). The regulations implementing section 1841(b)(1)(C) set certain levels of insurance that must be carried in order to be in compliance with that section. *See* 29 C.F.R. § 500.121. Based on the stipulation of the parties, there is no genuine issue for trial regarding Defendant's compliance with the registration and vehicle insurance provisions of the AWPA.[1] The only issue raised by Defendant is whether his violation was intentional within the meaning of the AWPA. Response at 1.

### C. Intentional Violation

In the event of violations of its substantive provisions, the AWPA provides "[a]ny person aggrieved by a violation of this chapter or any regulation under this chapter by a farm labor contractor ... may file suit in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 1854(a). "If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation under this chapter, it may award damages [to the complaining party]...." *Id.* § 1854(c)(1). Everett maintains that, although he admittedly violated two provisions of the AWPA, the Court should not award summary judgment to the Plaintiffs because "a genuine factual issue exists as to whether this Defendant's alleged conduct was intentional within the meaning of 29 U.S.C. § 1854(c)(1)...." Response at 1.

Under the predecessor to the AWPA, the Farm Labor Contractor Registration Act of 1963 (FLCRA),[2] courts interpreted the term "intentionally" to mean "conscious or deliberate" and not to require a specific intent to violate the law. *Salazar–Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334, 1345 (5th Cir.1985), *cert. denied* 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986); *Alvarez*

---

**1.** Defendant implicitly conceded Plaintiffs are seasonal agricultural workers within the meaning of the AWPA when he stipulated he violated the act by transporting them without authoriza-

tion and sufficient insurance. *See* Joint Pre-trial Stipulation, filed May 6, 1991, at 6.

**2.** Pub.L. No. 88–582, 78 Stat. 920 (1964).

*v. Longboy,* 697 F.2d 1333, 1338 (9th Cir. 1983); *Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1224 (7th Cir.1981). The Eleventh Circuit characterized the standard as one "by which a person may be held liable for the natural consequences of his or her acts." *Rivera v. Adams Packing Ass'n, Inc.,* 707 F.2d 1278, 1283 (11th Cir.1983). This standard has been referred to as the "common civil standard" and has been read as consistent with the conscious and deliberate standard. *See Salazar–Calderon,* 765 F.2d at 1345. Although the Eleventh Circuit has not yet interpreted the term "intentionally" as used in § 1854 of the AWPA, several other courts have held the standard is identical to that in the analogous FLCRA provision. *See Bueno v. Mattner,* 829 F.2d 1380, 1385 n. 4 (6th Cir.1987), *cert. denied* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988); *Saintida v. Tyre,* 783 F.Supp. 1368, 1374 (S.D.Fla. 1992) (citing *Rivera* and other cases interpreting the FLCRA as authority for the standard under the AWPA); *Aviles v. Kunkle,* 765 F.Supp. 358, 365 (S.D.Tex. 1991). Under either act, courts have consistently held that, as a matter of law, a defendant's lack of actual knowledge of the act and its requirements does not preclude a finding that an intentional violation occurred. *Bueno,* 829 F.2d at 1385; *Salazar–Calderon,* 765 F.2d at 1345 n. 5; *Saintida,* 783 F.Supp. at 1374–75; *Aviles,* 765 F.Supp. at 365. Whether the defendant intentionally violated the act is capable of resolution on a motion for summary judgment. *See Saintida,* 783 F.Supp. at 1375 n. 3.

Both the Plaintiffs and Everett rely upon Everett's deposition to support their positions on the issue of intent. *See* Deposition of Leonard Everett (hereinafter Deposition), filed October 29, 1991. Plaintiffs maintain his deposition testimony shows his actions in violation of the AWPA were intentional in that they "resulted from the standard operating procedures Everett adopted in his labor contracting business." Memorandum in Support at 6. Everett re-

sponds that his deposition testimony clearly shows his violations were "a one time occurrence that was the result of mere negligence by this Defendant." Opposition Memorandum at 2. An examination of the deposition in question reveals the testimony supports Plaintiffs' position.

■ Defendant's arguments that his actions were the result of "mere negligence" are nothing more than pleas of ignorance of the act. Everett contends he first learned of the transportation authorization and vehicle insurance level requirements after the accident. Opposition Memorandum at 2. But it is clear "[t]he Defendant['s] lack of knowledge ... does not preclude a finding that [he] committed an intentional violation of the Act." *Aviles,* 765 F.Supp. at 365. Second, he contends that since the accident "he has been in compliance with the AWPA requirements." Opposition Memorandum at 3. Even assuming this were true, which the Court does not,[3] it does not change the fact he was consciously and deliberately transporting workers before the accident without the requisite authorization and insurance. Everett's ignorance of the requirements of the Act prior to the accident is simply irrelevant to the question of whether he acted "intentionally" for purposes of § 1854.

■ As Plaintiffs suggest, Everett's deposition clearly shows it was his normal business practice to transport at least some of the workers he recruited to the work site. *See* Deposition at 26–28, 35–36, 39, 41–42, & 45. Furthermore, he freely admits he was not in compliance with the authorization and insurance provisions of the AWPA up to the date of the accident. *See* Joint Stipulation at 6. Where operating in violation of the AWPA is the defendant's normal business practice, his violations are intentional within the meaning of § 1854. *Osias v. Marc,* 700 F.Supp. 842, 844 (D.Maryland 1988). Accordingly, the Court finds Plaintiffs are entitled to sum-

---

**3.** In fact, his deposition testimony indicates he continued to transport workers in violation of the AWPA even after the accident in question.

*See* Deposition of Leonard Everett, filed October 29, 1991, at 35–36, 39 & 41.

mary judgment on the question of Everett's liability under the AWPA.

### D. Damages

Prevailing plaintiffs under the AWPA are entitled to damages "up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, or other equitable relief." 29 U.S.C. § 1854(c)(1). Plaintiffs originally prayed for actual or statutory damages, whichever is greater. *See* Second Amended Complaint for Damages, Declaratory Relief, Injunctive Relief, and Costs of Litigation (Doc. # 31), filed February 9, 1991, at 8. Plaintiffs have elected on their motion for summary judgment, however, to seek only statutory damages of $500 per plaintiff per violation. Memorandum in Support at 6.

"The issue of statutory damages under the [AWPA] is left to the discretion of the court." *Aviles,* 765 F.Supp. at 367. "A court may award liquidated damages under § 1854(c)(1) even absent a showing of actual injury." *Id.* In fixing damages under the AWPA, the Court should consider the following: "(1) nature and persistence of the violations—including whether the violations are substantive or technical; (2) the extent of the defendants' culpability; (3) damage awards in similar cases; (4) the defendants' ability to prevent future violations of the AWPA and (5) the circumstances of each case." *Id.*

The Court finds the violations in this case are not technical but directly relate to Congress' concern about "abuses in the unsafe transportation of workers." *Barrett v. Adams Fruit Co., Inc.,* 867 F.2d 1305, 1308–09 (11th Cir.1989), *aff'd,* 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990). In enacting the registration and insurance requirements, Congress specifically had agricultural worker safety in transportation in mind. *See id.* at 1309 & n. 8. The record also shows the Defendant is culpable. His testimony indicates he was aware he needed a certificate to act as

a farm labor contractor, and had in fact obtained one each year he worked as such for approximately four years prior to the date of the accident. Deposition at 28. Moreover, when he obtained his certificate, he was given written materials informing him of the requirements of the law, but only tried to read them "sometimes." *Id.* Accordingly, Defendant has the ability to prevent future violations simply by complying with the authorization and insurance requirements of the AWPA.

Finally, the Plaintiffs in this case suffered injuries arguably the result of Defendant's malfeasance with the transportation provisions of the act. The legislative history of the AWPA indicates Congress intended for agricultural workers like the Plaintiffs "to recover fully for injuries caused by violations of the Act." *Barrett,* 867 F.2d at 1311. Private suits like the one before the Court are "[c]entral to the Act's enforcement." *Id.* at 1309. Statutory damage awards under the AWPA are intended to compensate individual plaintiffs and promote enforcement of the act. *Id.* at 1309 & n. 9. Moreover, other courts have deemed violation of the AWPA's vehicle insurance provisions serious enough to warrant a statutory award of $500 per violation. *See, e.g., Saintida,* 783 F.Supp. at 1376. Therefore, after due consideration of all the relevant factors, the Court finds each of the Plaintiffs is entitled to recover the full amount of statutory damages of $500 per violation. Because Defendant admits he violated two provisions of the AWPA, each plaintiff is awarded $1000.[4]

Accordingly, it is

ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment is hereby GRANTED.

DONE AND ORDERED.

---

**4.** The Plaintiffs remaining in this lawsuit, after dismissal of some due to discovery violations, *see* Order entered February 12, 1992 (Doc. # 62), are Mary Stewart, Blanca M. Gonzalez, Diana Gonzalez, Fidel Gonzalez, Fidel Gonzalez, Jr., Juana F. Gonzalez, and Rey Martin Gonzalez.