WILLIAM P. DIMITROULEAS, United States District Judge
THIS CAUSE is before the Court on Defendant Progressive American Insurance Company's Motion to Dismiss [DE 34], filed herein on March 12, 2018. The Court has carefully considered the Motion [DE 34], and is otherwise fully advised in the premises.
I. Background[1]
This is an action asserting class action claims for declaratory relief, injunctive relief, and compensatory damages relief pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). [DE 1] at ¶ 1.
The action arises out of a November 21, 2014 auto accident involving Janeece Farley, who was insured under an automobile insurance policy providing personal injury protection ("PIP") benefits issued by Defendant, Progressive American Insurance Company ("Progressive"). Following the accident, Farley sought chiropractic treatment for her bodily injuries from Plaintiff, Coastal Wellness Centers, Inc.
On or about November 21, 2014, Farley executed an Assignment of Insurance Benefits, Release & Demand, assigning all of her benefits under the subject policy to Coastal. The purpose of the assignment was to authorize Coastal to bill Progressive directly for the medical services provided to Farley, and to require Progressive to pay Coastal directly at its home office. As the assignee of Farley's PIP benefits, Coastal billed Progressive for medical services Plaintiff provided to Farley. Accordingly, Plaintiff Coastal asserts standing to sue based on the Assignment of Benefits received from Farley.
Included in the treatment Plaintiff provided to Farley were two (2) chiropractic manipulative treatment services billed under CPT code 98940. Plaintiff alleges that, while the correct reimbursement rate for each unit of CPT code 98941 was $46.51, Progressive only paid Plaintiff $45.58 for *1219 each, thus underpaying Plaintiff a total of about $2.
In its three-count Complaint, Plaintiff claims as follows: Count I-Declaratory Judgment; Count II-Injunctive Relief; and Count III-Breach of Contract for Unpaid PIP Benefits.
Defendant moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6). [DE 34].
II. Standard of Review
Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Conley v. Gibson , 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley , 355 U.S. at 41, 78 S.Ct. 99 ). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. See Linder v. Portocarrero , 963 F.2d 332, 334-36 (11th Cir. 1992) (citing Robertson v. Johnston , 376 F.2d 43 (5th Cir. 1967) ).
However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal , 129 S.Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " Twombly , 550 U.S. at 564 n. 8, 127 S.Ct. 1955 (quoting Scheuer v. Rhodes , 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds, Davis v. Scherer , 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ).
"A court's review on a motion to dismiss is 'limited to the four corners of the complaint.' " Wilchombe v. TeeVee Toons, Inc. , 555 F.3d 949, 959 (11th Cir. 2009) (quoting St. George v. Pinellas Cnty. , 285 F.3d 1334, 1337 (11th Cir. 2002) ). However, "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims," id. (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc. , 116 F.3d 1364, 1369 (11th Cir. 1997) ).
III. Discussion
This case presents a question of interpretation of the Florida No-Fault ("PIP") Statute, Fla. Stat. § 627.736 (2012 to date).
Fla. Stat. § 627.736 sets forth a basic coverage mandate which requires every PIP insurer to reimburse 80% of reasonable expenses for medical services. See Geico General Insurance Co. v. Virtual Imaging Services, Inc. , 141 So.3d 147, 150 (Fla. 2013). There are two different methodologies permitted under the statute for calculating reimbursements to satisfy the PIP mandate: (1) the "reasonableness is a fact dependent inquiry" methodology prescribed under Florida Statutes subsection § 627.726(5)(a);[2] and (2) the "schedule of maximum charges" provided under Florida Statutes subsection 627.736(5)(a)1.[3]
*1220 Plaintiff does not contest whether Defendant's automobile insurance policy properly elected the "schedule of maximum charges." The parties agree that Progressive is entitled to limit reimbursement for medical expenses based on the "schedule of maximum charges" contained in Section (5)(a) of the PIP Statute. See Fla. Stat. § 627.736(5)(a). Accordingly, this case is about Defendant's application of the "schedule of maximum charges" to its reimbursements of claims submitted by Plaintiff for chiropractic manipulative treatment services billed under CPT code 98940.
The "schedule of maximum charges" limits payment for the chiropractic services rendered by Plaintiff to "200 percent of the allowable amount under" the "participating physicians fee schedule of Medicare Part B." See Fla. Stat. § 627.736(5)(a) 1.f.(I). In turn, the Medicare Part B Physicians Fee Schedule (the "Medicare Part B Physicians Fee Schedule" or "PPFS-MPB") prescribes the reimbursement rate for over 7,000 services performed by medical professionals, including the chiropractic medical services that are the subject of this case.
The reimbursement value for services under the PPFS-MPB are calculated by multiplying (1) the relative value of a service; (2) the conversion factor for the particular year; and (3) the geographic adjustment factor applicable to the locality in which the service was provided. See 42 U.S.C. § 1395w-4(b)(1). Therefore, using simple arithmetic (addition and multiplication), the reimbursement value for any service, in any part of the United States, for any given year can be easily ascertained by the Defendant using the Medicare Part B Physicians Fee Schedule. The tables of values for the cost factors are published each year in the annual Medicare Physicians Fee Schedule Final Rule and are readily available and easily accessible on the Centers for Medicare and Medicaid ("CMS") website.[4]
The instant dispute arises from Progressive's application of the PPFS-MPB in effect in 2012-2014. During that timeframe, a 2% reduction was imposed on chiropractic services paid for by Medicare in order to recoup costs for a study/demonstration conducted by Brandeis University to evaluate the feasibility of expanding Medicare coverage for certain chiropractic services. See 74 Federal Register 61926-61928. The Medicare Prescription Drug, Improvement and Modernization Act of 2003 (hereinafter "MMA") required that the study be "budget neutral;" therefore, the CMS Office of the Actuary ("OACT") established a plan to recoup the outstanding $50 million apportioned to CMS to fund the study by reducing the payment by Medicare for chiropractic fee codes 98940, 98941 and 98942 by two percent (2%) commencing in calendar year 2010 through calendar year 2014. Id. OACT estimated that CMS would recoup $10 million per year from 2010 through 2014 by reducing CMS' payment of Medicare claims. Id.
The Department of Health and Human Services ("HHS") made it clear that the 2% reduction was only to be applied to Medicare claims:
Consistent with the proposed rule, for this final rule with comment period, we are reflecting this reduction only in the payment files used by the Medicare contractors *1221 to process Medicare claims rather than through adjusting the RVUs. Avoiding an adjustment to the RVUs would preserve the integrity of the PFS, particularly since many private payers also base payment on the RVUs.
74 Fed. Reg. 61927 (emphasis added); see also 78 Fed. Reg. 74790 (same). The Medicare Physician Fee Schedule ("PFS") Final Rule authored by HHS for each calendar year from 2010 through 2014 reflected in the Federal Register explicitly reasserts the calendar year 2010 PFS policy establishing the reductions for Medicare claims only. See 78 Fed. Reg. 74790-74791.
Plaintiff asserts that the Defendant misinterpreted what is the Medicare Part B Physicians Schedule and misapplied the CMS Payment Files instead, which resulted in improper, unauthorized reductions by 2% for each unit of a chiropractic manipulation. The Court agrees. Notwithstanding that no provisions of Fla. Stat. § 627.736(5)(a) 1 nor of the relevant portions of the federal regulations permit private payers, such as Defendant Progressive, to reduce payment to chiropractors treating under chiropractic fee codes 98940, 98941 and 98942 by two percent (2%), Defendant did so during calendar years 2012-2014, resulting in systematic underpayment of its insured's PIP chiropractic claims.
The Court rejects Defendant's argument that it was permitted to use the 2% fee reduction because those values were calculated into the CMS payment files. Regardless of whether it was easier for a private payer to use those values rather than calculate the formula once a year, such reduction is contradicted by the plain language of § 627.736(5)(a) 1, which clearly allows an insurer to limit reimbursement to medical care to the treating chiropractor to "200 percent of the allowable amount under" the "participating physicians fee schedule of Medicare Part B." See Fla. Stat. § 627.736(5)(a) 1.f.(I). "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld , 450 So.2d 217, 219 (Fla. 1984). The Medicare Physician Fee Schedule ("PFS") does not include the two percent (2%) reduction for CPT codes 98940, 98941 or 98942. To the extent that Defendant relied upon the CMS Payment Files to underpay chiropractic claims by 2%, such practice was improper. Additionally, it runs contrary to the stated point of applying the reduction to the payment files rather than the RVU's, so as to preserve the integrity of the RVU's as they are relied upon by many private payers, such as Defendant.
Based upon the foregoing, Defendant could not take advantage of the 2% reduction which was incorporated into the CMS Payment Files to allow Medicare to recoup the cost of a study in order to reduce its payments to Plaintiff. Defendant's motion to dismiss for failure to allege a cognizable claim for declaratory relief, injunctive relief, or damages shall be denied.
Defendant also argues in its Motion that injunctive relief is unnecessary because the chiropractic demonstration ended in 2014, the CMS Payment Files no longer reflect a 2% reduction, and therefore Plaintiff cannot allege that Defendant continues to currently apply the 2% reduction. However, while the 2% reduction was only in effect from 2010 to 2014, the statute of limitations has not run on all underpaid claims arising from Defendant's practice at the time, and Plaintiff adequately pleads in the Complaint that Defendant continues to improperly reduce the payments of those claims or refuses to pay the *1222 proper amounts. Accordingly, the Court declines to dismiss the claim for injunctive relief at this time.
Defendant also contends that Plaintiff's counts for declaratory and injunctive relief should be dismissed because Plaintiff has an adequate remedy at law. The Court rejects Defendant's argument that Plaintiff cannot assert a claim for declaratory relief when an adequate alternative remedy exists at law. "Such a position is in direct contravention of Rule 57 of the Federal Rules of Civil Procedure" which provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." DWF Mgmt., LLC v. Starr Indem. & Liab. Co. , No. 16-CV-61238-KMM, 2016 WL 6611115, at *2 (S.D. Fla. Nov. 9, 2016) (quoting Johnson v. Geico Gen. Ins. Co. , No.: 08-cv-80740, 2008 WL 4793616, *3 (S.D. Fla. Nov. 3, 2008) (quoting Fed. R. Civ. P. 57 ). Further, pursuant to Fed. R. Civ. P. 8(d)(3), Plaintiff may plead alternate theories of recovery including injunctive and declaratory relief even if a remedy at law is pled in another count. See, e.g., Adelphia Cable Partners, Inc. v. E & A Beepers Corp. , 188 F.R.D. 662, 666 (S.D.Fla.1999) (King, J.) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief."). "It is the existence of a legal remedy that bars an equitable cause of action ... Therefore, until or unless an adequate remedy at law is proved, dismissal of Plaintiffs' claim is premature." Botting v. Goldstein , No. 15-CV-62113, 2015 WL 10324134, at *3 (S.D. Fla. Dec. 21, 2015) (citations omitted).
Finally, Defendant claims that Plaintiff has failed to allege class-wide compliance with the PIP statute's pre-suit notice requirement. See Fla. Stat. § 627.736(10) ("As a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer."). The Court disagrees. As to the claims for declaratory and injunctive relief, the Court agrees with the reasoning and conclusion of the Florida Fourth District Court of Appeal that, as these claims do not seek damages, they do not constitute an action for benefits under the section and therefore the statutory notice requirement is not a condition precedent to these claims. See Bristol W. Ins. Co. v. MD Readers, Inc. , 52 So.3d 48, 51 (Fla. 4th DCA 2010). See also A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co. , No. 16-CV-62610, 2017 WL 850177, at *2 (S.D. Fla. Mar. 3, 2017) (statutory notice pursuant to § 627.736(10) not required in action for declaratory relief). Additionally, as to the claim for breach of contract, Plaintiff has adequately pled compliance. See [DE 1] at ¶ 88 ("The Plaintiff and the Class members satisfied the pre-suit requirements of Fla. Stat. § 627.736(10) because Plaintiff and the Class members sent Defendant pre-suit demand letters prior to instituting this action."). Whether pre-suit notice is required for every class member is premature for adjudication prior to the class certification stage. However, the Court notes that there is convincing authority that individual notice by each class member is not required in the class action context, so long as compliance has been met by the class plaintiff. See Latman v. Costa Cruise Lines, N.V. , 758 So.2d 699, 704 (Fla. 3d DCA 2000) ; Kornberg v. Carnival Cruise Lines, Inc. , 741 F.2d 1332, 1336 (11th Cir. 1984).
IV. CONCLUSION
Based upon the foregoing, it is hereby ORDERED AND ADJUDGED as follows:
1. Defendant's Motion to Dismiss [DE 34] is DENIED.
*1223 2. Defendant shall file an answer within fourteen (14) days of the date of this Order.
DONE AND ORDERED in Chambers in Fort Lauderdale, Broward County, Florida this 3rd day of April, 2018.

All facts set forth in the background are according to the allegations of the Complaint [DE 1], which the Court assumes as true for purposes of this Motion.

Formerly subsection 627.736(5)(a)(1) under the 2008 version of the PIP statute.

Formerly subsection 627.736(5)(a)(2) under the 2008 version of the PIP statute.

The Court may take judicial notice of government publications and website materials. See, e.g., Abdus-Sabur v. Hope Village, Inc. , 221 F.Supp.3d 3, 9-10 & n.3 (D.D.C. 2016) (judicial notice of Medicare manual and government healthcare website); United States ex rel. Fox RX, Inc. v. Omnicare, Inc. , 38 F.Supp.3d 398, 405-06 & n.6 (S.D.N.Y. 2014) (judicial notice of CMS website).